Brown, District Judge.
The libel charges that between 3 and 4 o’clock in the afternoon of December 26, 1891, while the libelant’s lighter Alfred Collins was being moved stern first towards the bulkhead from alongside the steamer Chalmette, which lay on the southerly side of pier 25, North river, the steamer’s propeller was suddenly set in motion and came in contact with the starboard quarter of the lighter, breaking some planks and causing her afterwards to sink. The libel was filed to recover the damages.
*175 The evidence shows an oval-shaped wound a little beneath the water line from four to seven feet distant from the stern post of the lighter, extending across the third, fourth, and fifth plank streaks from the top. The planks were from six to seven and a half inches wide, one or two •of which were cracked and broken. The marks of the wound consisted of two somewhat sharp and narrow surface cuts, and beyond them three very rough and ragged abrasions, or scourings beneath the grain, varying from five to six inches broad, and running somewhat diagonally across the plank streaks.
The lighter had come alongside the Chalmette with a cargo of iron, which she had expected to deliver to the steamer; but as it could not be taken aboard, the lighter, after several hours, was ordered away. The steamer sailed at quarter before 5, and from 1 o’clock till 4 she had been, as usual, working her propeller occasionally, sometimes forwards, sometimes backwards. The master of the lighter testifies that before proceeding to haul his lighter astern for the purpose of mooring her near the bulkhead behind the steamer, he looked to see whether the propeller was in motion, and that it was not in motion when he began to haul the lighter astern; but that it started up as the lighter came under the quarter of the steamer, the wind and tide setting the lighter that way towards the bulkhead.
It is not denied that when the lighter got under the steamer’s quarter, the propeller was in motion. The witnesses for the steamer testify that the propeller was in motion when the lighter started; that a suitable and proper watch was kept astern, and that as soon as the lighter was seen to be coming under her quarter, the engine was stopped; and that the lighter hung for a considerable time across the stern of the steamer; and it is contended that the wounds shown, and the damage done, were not caused, and could not have been caused, by contact with the propeller, but only by contact with the iron yoke of the rudder, a projection about 20 inches in length by 5 or 6 inches across on the top, used for fastening chains to the rudder in case of accident to the steam gear for steering. The libelants contend that the damage was done by the propeller .-alone.
There is considerable conflict in the evidence; and as the damage was done beneath the water line, and no one saw just what did it, the question whether it was done by the propeller, or by the yoke of the rudder, must be determined by inference from the circumstantial evidence and the probabilities of the case, since direct observation was not possible.
Upon the best consideration I have been able to give the case, my judgment is that the wounds were not probably caused by the propeller blades; but by the yoke of the rudder, which at the time was held firmly fast. The two sharp and thin surface cuts just beyond the three broad and ragged abrasions above referred to, could not have been caused by the blades of the propeller, since the shape and the direction of the rotations of the blade edges were not such as could produce straight thin cuts like those shown, and in the direction shown, in the plank produced ¡upon the trial. They might have been produced by the surging of the *176 lighter up and down, against the corners of the yoke, through the waves in the slip, and the yoke is of a breadth corresponding with the three broad abrasions. The extreme roughness of these abrasions also, and the ragged and broomy ends of the grain of the wood still left at the sides of these three abrasions, could not have been made, it seems tome, by an object in rapid motion, like the blades of a propeller; but only by a comparatively slow motion such as the surging of boats, and the rubbing against such a projection would produce. In other cases before me of wounds produced by propellers, the appearance of the wound has been wholly different, (see The El Dorado, 27 Fed. Rep. 762, and The City of Pueblo, Mar. Reg., April 14, 1886, there cited; affirmed on appeal;) and the testimony of Mr. Reed is very strong to the effect that wounds like these could not have heen produced by a propeller; and that the construction of the steamer and of the stern of the lighter, as illustrated by models, were such that they could not possibly have come in contact at a point from 4 to 7 feet only from the lighter’s stern, and pot nearer than 13 feet; and that a greater distance would be necessary in order to produce abrasions upon several planks of the lighter such as this wound exhibited.
The libelants have not been able to meet these considerations by any direct evidence; from the nature of the case they could not. It is to be regretted that the determination of the cause of the wound could not be made upon more direct and decisive evidence than the inferences above mentioned. But the burden of proof being upon the libelant to show negligence or fault in the defendant in order to recover, this must be established by a reasonable preponderance of evidence. In the present case, this does not seem to me to be established, but the contrary.
As respects the yoke on the rudder, the lighter took all the risks of the steamer’s construction in allowing her to swing in under the steamer’s stern, instead of keeping her off by additional lines; and the risk of any contacts with her which were thereby caused. The British Empire, 24 Fed. Rep. 493; The Willie and The Ludgate Hill, 29 Fed. Rep. 153.
The libel is dismissed; but, under the circumstances of doubt, without costs.